UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION AT LONDON

| | |
|---|---|
| WILLIAM ROBERTS, Administrator of the Estate of PAULINE ROBERTS, and POLLY ROBERTS WILLMAN, Administratrix of the Estate of WILLIAM ROBERTS,<br><br>    Plaintiffs,<br><br>V.<br><br>EDDIE GIRDER, et al.,<br><br>    Defendants.[*] | CIVIL NO. 6:15-160-KKC<br><br><br><br>**MEMORANDUM OPINION & ORDER** |

*** *** ***

The Plaintiffs, Polly Roberts Willman, in her capacity as the Administratrix of the Estate of William Roberts, and William Roberts, as Administrator of the Estate of Pauline Roberts, ("Plaintiffs"), bring the present complaint under 42 U.S.C. § 1983 alleging that, in order to advance a re-election agenda, various constitutional and state law harms occurred when the defendants, government officials from the city of Somerset, Kentucky, ("City Defendants"), conspired against Williams Roberts and demolished the Roberts family property.

Among other things, Plaintiffs allege that City Defendants violated their procedural due process rights by summarily ejecting Williams Roberts from the family property and destroying it without proper notice or a hearing. City Defendants filed a motion to dismiss (DE 17) the procedural due process claim. Plaintiffs then filed a motion under Federal Rule

---

[*] Somerset City Mayor Eddie Girdler is spelled incorrectly in the caption of Plaintiffs' complaint, therefore the official title will reflect this error until the parties move to correct the error.

1

of Civil Procedure 17(a)(3) to substitute Rachelle Bombe and Polly Willman, along with William Roberts, for the Estate of Pauline Roberts.

After briefing, a hearing in this case was held on September 29, 2016. The matter is now ripe for review. For the foregoing reasons, City Defendants' motion to dismiss (DE 17) will be granted, and Plaintiffs' motion to substitute (DE 22) will be denied.

## I. BACKGROUND

The following facts are taken from Plaintiffs' Complaint.

Pauline Roberts died intestate on November 17, 1989 (Compl. ¶ 8). She was survived by her three children: her son, William, and two daughters, Polly Willman and Rachelle Bombe. (Compl. ¶ 10). Before her death, Pauline Roberts owned real property located at 117 Sagasser Street in Somerset, Kentucky. (Compl. ¶ 9, 17). William Roberts lived with his mother in the final years of her life at 117 Sagasser Street and continued to live on the property after her passing.

On May 3, 2013, Somerset City Attorney Carrie Wiese mailed a certified letter addressed to the "Estate of Pauline Roberts" containing allegations that the dwelling was unfit for human habitation, occupancy, or use. (Compl. ¶ 23). The letter also notified the recipient that a nuisance abatement hearing to address the property's condition was set for 1:40 p.m., May 23, 2013, at Somerset City Hall. Five days later on May 8, 2013, William Roberts signed a return receipt for the letter, and he subsequently hired an attorney, John Prather, Jr., to represent him at the hearing. (Compl. ¶ 26). Once retained, Prather sent a letter to Wiese advising her of his representation and informing her of a property remediation plan that William Roberts was in the process of preparing. Prather also notified Wiese of a scheduling conflict that he had with the day and time of the scheduled hearing. (Compl. ¶ 37). Wiese agreed to postpone the hearing, but no new date was ever set. (Compl. ¶ 38).

On May 23, 2013, however, Prather met informally with City Attorney Wiese, along with Somerset Building Inspector Wes Finley and Somerset Zoning Officer Dennis Crist at City Hall. (Compl. ¶ 44-45). At the outset, Wiese directed Tracy Stevens, an employee responsible for taking and keeping all official records during nuisance abatement hearings, not to take minutes of the meeting, as it was "off the record." (Compl. ¶ 45). The informal meeting proceeded, and the participants discussed a possible remediation plan for the Roberts property.

Over the next fourteen months, Roberts made little effort to address the City of Somerset's concerns with the Roberts property. It was during this period, however, that Plaintiffs allege the gears of the government began to turn in the plot to rid the City of Somerset of the alleged property nuisance.[1]

The Complaint states that in August, 2014 Zoning Officer Crist approached Tracy Stevens demanding records of the May 23, 2013 Roberts property nuisance abatement hearing. Tracy Stevens, the record keeper, informed Crist that she did not take notes at the hearing because she was told not to. (Compl. Ex. F, Stevens Affidavit at ¶ 9) ("Mrs. Wiese specifically told me the meeting was 'not official' and directed me not to take any notes or otherwise record the meeting.").

Shortly thereafter on August 14, 2014, Roberts received a letter from Crist that stated a nuisance hearing was held on May 23, 2013. It reads in full:

> Please be advised that a hearing was held at Somerset City Hall on Thursday, May 23rd, 2013, pursuant to notice mailed and posted, regarding the above referred to property. You were represented by your attorney Mr. John Prather.
>
> Evidence was introduced by Somerset building inspector Wes Finley, the said property is a hazard and structurally unsafe for human habitation.

---

[1] The complaint contains a multitude of allegations concerning various Somerset officials and their role in the conspiracy to remove Roberts from his property. The current matter concerns only Count I, the procedural due process claim. Only the facts related to the due process claim are discussed here.

3

> Since nothing has been done to correct these issues, you are hereby ORDERED to repair or vacate said property within 30 days of the date hereof. Otherwise, the City of Somerset will take whatever action is necessary to eliminate this problem.
>
> The City of Somerset is willing to assist in helping you move your belongings and providing a storage unit at no cost to you. We will also take care of the dilapidated structure at no cost.

(Compl, Ex. G.).

On September 16, 2014, Roberts received a second letter warning him that property had to be vacated at once. (Compl., Ex. J.) The letter also listed several evidentiary findings that were found at the alleged May 23, 2013 hearing. (Compl. Ex. J.). Roberts did not respond to either letter, though Plaintiffs do not dispute that he received them. Plaintiffs allege Mr. Prather never received notice of the letters because his name was excluded on the letters. (Compl. ¶73). On September 19, 2014, the City demolished the Roberts residence.

## II. DISCUSSION

Under Rule 12(b)(6), the Court must dismiss a complaint that does not state a claim for relief that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To state a plausible claim, a plaintiff must plead such facts so as to allow a court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id.* (citing *Twombly*, 550 U.S. at 556). The Court views the complaint in the light most favorable to the plaintiff and must accept as true all well-pleaded factual allegations contained within it. *Id.* at 678 (citing *Twombly*, 550 U.S. at 570); *see also HDC, LLC v. City of Ann Arbor,* 675 F.3d 608, 611 (6th Cir. 2012) ("[T]he court must construe the complaint in the light most favorable to the plaintiff, accept all of the complaint's factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of its claim that would entitle relief."); *Ziegler v. IBP Hog Mkt., Inc.*, 249 F.3d 509, 511–12 (6th Cir. 2001).

4

In that review, the Court looks at all the pleadings filed in the case. *Gavitt v. Born*, 835 F.3d 623, 640 (6th Cir. 2016); *Rondigo, LLC v. Twp. of Richmond*, 641 F.3d 673, 680 (6th Cir. 2011). Assessment of the facial sufficiency of the complaint must ordinarily be undertaken without resort to matters outside the pleadings. *Wysocki v. Int'l Bus. Mach. Corp.*, 607 F.3d 1102, 1104 (6th Cir. 2010). When resolving a motion to dismiss, then, a district court is limited to matters formally contained in the pleadings. However, "[i]f referred to in a complaint and central to the claim, documents attached to a motion to dismiss form part of the pleadings." *Armengau v. Cline*, 7 F. App'x 336, 344 (6th Cir. 2001) (quoting *Jackson v. City of Columbus*, 194 F.3d 737, 745 (6th Cir. 1999)); *see also Rondigo, L.L.C.*, 641 F.3d at 681 (citing *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008)) (A court may consider "exhibits attached [to the complaint], public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the [c]omplaint and are central to the claims contained therein.").

A. Procedural Due Process

The sole issue presented in City Defendants' motion to dismiss is whether the City of Somerset, through its various city officials, provided Plaintiffs with adequate process under the United States Constitution. The Court finds that Plaintiffs received constitutionally sufficient process before City Defendants razed the Roberts property.

The Due Process Clause of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "In order to establish a procedural due process claim, a plaintiff must show that (1) he had a life, liberty, or property interest protected by the Due Process Clause; (2) he was deprived of this protected interest; and (3) the state did not afford him adequate procedural rights prior to depriving him of the property interest." *Albrecht v. Treon*, 617 F.3d

5

890, 894 (6th Cir. 2010) (citing *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006)).

Neither party disputes that Roberts had a protected property interest in both the real and personal property in the Roberts property. (DE 17-2, at 7). Thus, the only question is whether the complaint states a plausible claim that the Plaintiffs were denied adequate process before the City of Somerset deprived them of their protected property interest.

Plaintiffs argue that City Defendants violated Roberts' procedural due process rights by failing to provide proper notice. First, they claim that the nuisance abatement complaint addressed to the "Estate of Pauline Roberts" containing allegations that the dwelling was unfit for human habitation (Compl. ¶ 23) constituted insufficient notice because it was "issued to a then non-existent entity" (DE 22-1, at 6). Second, they claim that City Defendants did not provide proper notice because Roberts "received no notice that his interest as an occupant of the property was at risk or that he could or would be summarily ejected from the property." (DE 22-1, at 7).

Both arguments are without merit. At its core, procedural due process requires "notice and an opportunity to be heard at a meaningful time and in a meaningful manner." *Garcia v. Fed. Nat'l Mortg. Ass'n*, 782 F.3d 736, 741 (6th Cir. 2015) (internal quotations and citations omitted). A primary purpose of the notice requirement of the due process clause is to ensure that a party is well apprised of the matter potentially affecting one's property rights and that the party is ensured that the opportunity for a hearing is meaningful. *See Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) ("Th[e] right to be heard has little reality or worth unless one is informed that the matter [which has the potential to affect one's rights] is pending and can choose for himself whether to appear or default, acquiesce or contest.").

Here, the letter addressed to the "Estate of Pauline Roberts" adequately apprised Plaintiffs of the alleged problems with the Roberts property and the risk for abatement. The

6

letter informed the recipient that the property was unfit for human habitation, occupancy, or use, and, in addition, it included in it a specific date, May 23, 2013, on which a nuisance abatement hearing would be conducted. (Compl. ¶ 23). Plaintiffs do not dispute that the existence or receipt of this letter. Nor could they. After receiving and reading the letter, Roberts retained counsel who actually met with City of Somerset officials about the alleged property nuisance. Roberts' actions confirm that he had actual notice of the impending determination because he hired an attorney to protect his property interest.[2]

Plaintiffs also challenge the sufficiency of the content of the correspondence from the City. Specifically, Plaintiffs argue that Roberts "received no notice that his interest as an occupant of the property was at risk or that he could or would be summarily ejected from the property." (DE 22-1, at 7). Plaintiffs also argue that City Defendants failed to comply with Somerset City Ordinances before evicting Roberts and demolishing the house. (DE 22-1, at 7).

Taking Plaintiffs statements as true, the violation of a local ordinance is not enough to establish a due process violation. Precedent makes clear that "what process is due" is not answered by state law or local ordinances, but "by constitutional benchmarks." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541–42 (1985). Therefore, due process may be satisfied by actual notice of the decision to demolish the property and the consequences for failure to timely challenge the determination.

---

[2] In reality, the reason the City of Somerset addressed the letter to the "Estate of Pauline Roberts" is because before May 3, 2013—the date on which the letter was sent—no estate had been executed for the City to properly address its heirs. (Compl. ¶ 27). Additionally, at the time the first letter was mailed, the property was still registered in Pauline Roberts' name. (DE 24, Ex. 1). *See Rodney v. LaHood*, 359 F. App'x. 634, 637 (6th Cir. 2010) (A court may "consider materials in addition to the complaint if such materials are public records or are otherwise appropriate for the taking of judicial notice.").

7

Plaintiffs next argue that their procedural due process rights were violated because the informal, off-the-record discussion with Roberts' counsel did not satisfy the requirement for an opportunity to be heard.

The process provided to Plaintiffs did not violate the Due Process Clause. "The requirement for 'due process of law' functions somewhat like equity to require procedural fairness and to prohibit the state from conducting unfair or arbitrary proceedings." *Garcia v. Fed. Nat'l Mortg. Ass'n*, 782 F.3d 736, 740–41 (6th Cir. 2015). "[T]he Due Process Clause is flexible and calls for such procedural protections as the particular situation demands." *Id.* at 741. In *Mathews v. Eldridge*, the Supreme Court laid out three factors to be considered when determining whether the process provided was adequate: (1) "the private interest that will be affected by the official action;" (2) "the risk of erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. 319, 335 (1976).

Plaintiffs have a private interest in the Roberts property, but the City of Somerset also has an interest in maintaining safe dwelling places and in protecting the interests of the public in general. The second and third factors are at issue in this case. The crux of Plaintiff's argument is that they received constitutionally insufficient process because the nuisance abatement hearing never occurred. But procedural due process is not so inflexible a concept. Considering the all of the circumstances—from the time the first letter was sent on May 3, 2013, to the time the Roberts property was razed a year and a half later—City Defendants' actions satisfied due process. Roberts received actual notice by both the nuisance abatement hearing letter and by the notice of condemnation. *See Hroch v. City of Omaha*, 4 F.3d 693,

8

696 (8th Cir. 1993) ("Because Hroch had actual notice that the City intended to condemn all buildings on the premises, there was no procedural due process violation.").

Even more so, Roberts was provided with the opportunity to be heard in a meaningful manner. Roberts' attorney cancelled the May 23, 2013 hearing, but nevertheless showed up at City Hall that day to intervene on behalf of his client. While the informal meeting did not constitute a nuisance abatement hearing in and of itself, there is no dispute that both Prather and the Somerset City officials who attended came away from that meeting with an understanding of the City's concerns regarding Roberts' property. Further, Roberts was given more than a year in which to makes changes to his property. This amount of time provided him with the opportunity to challenge the city's actions and reduced the risk of erroneous deprivation.

The third factor, which considers the government's interest, including the fiscal and administrative burdens that the additional or substitute procedural requirement would entail, is most significant here because Plaintiffs have failed to demonstrate why the procedures provided did not adequately protect their property interests. While the Court is mindful of the allegations of fraud and conspiracy that purportedly gave rise to the desire to destroy the Roberts property, those allegations alone do not suffice to constitute a violation of Plaintiffs' procedural due process rights. Plaintiffs do not dispute that Roberts received the August 14, 2014 and September 16, 2014 letters. Roberts did nothing in response to these letters. Most importantly, Roberts had at his disposal established procedures to challenge the City's actions. (Compl. ¶ Ex. B, City Ordinance 650, Section Four)(stating that a party may "within thirty (30) days after the posting and service of the order [to repair or vacate a premises] petition the Circuit Court for an injunction restraining the public officer from carrying out the provisions of the order."). Roberts chose not to take advantage of them. Plaintiffs cannot now use Roberts' inaction to create a violation of due process. *See Santana*

*v. City of Tulsa*, 359 F.3d 1241, 1244 (10th Cir. 2004) ("A party cannot create a due process claim by ignoring established procedures.").

The issue before this Court is whether the minimum requirements of process were met. Procedural due process claims do not focus on the end result or the egregiousness of the deprivation itself, but only on whether the process accorded to deprive a party of constitutionally sufficient process. *See Howard v. Grinage*, 82 F.3d 1343, 1350 (6th Cir. 1996). Plaintiffs have not demonstrated that they received constitutionally inadequate due process and, therefore, Plaintiffs have failed to state a procedural due process claim.

B. Motion to Substitute

On May 3, 2013, the day Carrie Wiese mailed the certified letter to the "Estate of Pauline Roberts" concerning the City's concerns, the Roberts property was still registered in Pauline Roberts' name. (DE 24, Ex. 1). Pauline Roberts died on November 17, 1989. No estate existed, nor had an administration of an estate been established at the time the certified letter was mailed. Under Kentucky law, estates do not have property interests in real property. Instead, title to real estate in Kentucky vests in the heirs or devisees at the moment of death. *Wood v. Wingfield*, 816 S.W.2d 899 (Ky. 1991); *Slone v. Casey*, 193 S.W.3d 336, 337–38 (Ky. Ct. App. 2006). With respect to personal property, KRS 395.010 requires that an estate be administered within ten years of death.

City Defendants' initial motion to dismiss sought to dismiss the Estate of Pauline Roberts' § 1983 procedural due process claim based on the fact that the Estate of Pauline Roberts did not have the necessary property interest to sustain a claim. *See Albrecht*, 617 F.3d at 894. After City Defendants filed their instant motion to dismiss, Plaintiffs filed a motion pursuant to Federal Rule of Civil Procedure 17(a)(3) to substitute Rachelle Bombe and Polly Willman, along with Williams Roberts in his individual capacity, as the real party

in interest for the Estate of Pauline Roberts. (DE 22). Specifically, Plaintiffs seek to substitute Bombe, Willman, and Roberts in the place of the Estate of Pauline Roberts for the procedural due process, civil conspiracy, defamation, and invasion of privacy claims set forth in the complaint. (DE 27, at 5) ("Plaintiffs seek to substitute the Movants in the place of the Estate of Pauline Roberts as stated in the Complaint, which is named in the procedural due process, civil conspiracy, defamation, and invasion of privacy counts.").

Rule 17 directs that "[n]o action shall be dismissed on the grounds that it is not prosecuted in the name of the real party in interest," and allows for "joinder, or substitution of the real party in interest." Fed. R. Civ. P. 17(a). It further provides that such a "substitution shall have the same effect as if the action had been commenced in the name of the real party in interest." *Id.*

Granting Plaintiffs' motion, however, would be futile. Defamation and invasion of privacy claims are personal in nature. *See Smith v. Martin*, 331 S.W.3d 637, 640 (Ky. Ct. App. 2011); *Mineer v. Williams*, 82 F. Supp. 702, 704–06 (E.D. Ky. 2000). *See also* Restatement (Second) of Torts § 6521; KRS § 391.170. As plead, the complaint alleges no facts as to how Bombe or Willman were defamed or how their privacy rights were invaded. Thus, even if movants Bombe and Willman were substituted, their claims would fail as a matter of law. *See Iqbal*, 556 U.S. at 678.

Moreover, allowing Plaintiffs' motion to substitute for the procedural due process claim would also be futile. As established above, City Defendants did not violate Roberts' procedural due process rights. At the hearing, Plaintiffs seemingly allege that Bombe and Willman were actually heirs and interested parties and, therefore, also received constitutionally defective notice. This argument is without merit. As City Defendants argued during the hearing, at the time the first letter was sent, Plaintiffs had not yet created an estate. City Defendants' notice to Plaintiffs was constitutionally sufficient because it was

11

"reasonably calculated, under all of the circumstances, to apprise the interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane*, 339 U.S. at 314. Even more, "[t]he Constitution . . . judges the adequacy of notice from the perspective of the sender, not the recipient," *Lampe v. Kash*, 735 F.3d 942, 944 (6th Cir. 2013), "which means that the individual recipient's lack of due diligence will not negate otherwise reasonable efforts at notice." *Ming Kuo Yang v. City of Wyoming*, 793 F.3d 599, 602 (6th Cir. 2015).

City Defendants did all that was constitutionally required to give notice to Bombe and Willman given the information available at the time the notice was sent. The Roberts family did not administer the estate or take any other action in regard to the estate. Simply, there was not a specific person of record to whom the City of Somerset could send a notice. Sending a letter to the address of the property of concern was reasonable and fairly calculated given these circumstances. Roberts did not inform his sisters of the nuisance abatement hearing, but there is no dispute that Roberts, an heir to the property and the person who lived at the property, received actual notice and hired an attorney in response to the City of Somerset's original letter. The due process clause is not implicated because of an apparent lack of communication between siblings.

Lastly, Plaintiffs' seek to substitute Bombe and Willman in the civil conspiracy claim. Plaintiffs are not at all clear under what theory they seek to substitute the sisters in claim. The allegations in the complaint do not implicate the Estate of Pauline Roberts in any conspiracy other than a claim for procedural due process. No procedural due process violation occurred in this case, therefore, substituting the sisters under the civil conspiracy claim tethered to a due process violation would be futile because to prevail on a § 1983 conspiracy claim, the plaintiff must show an underlying constitutional violation. *See Umani v. Mich. Dep't of Corr.*, 432 F. App'x. 453, 462 (6th Cir. 2011).

C. <u>Remaining Claims</u>

The resolution of the matters pending before the Court is not the end of the story. This case is further complicated by events that occurred between the time the parties filed the matter and the present. After the two motions were filed, William Roberts passed away. [DE 34]. Polly Willman, as Administratrix of the Estate of William Roberts, was substituted into the case in place of William Roberts as plaintiff in his individual capacity. Thus, the Court must address whether the remaining claims survive Roberts' death, such that they could be properly brought by the administrator of his estate.

Left are three additional federal civil rights claims under § 1983. Specifically, Plaintiffs allege: in Counts II-III, a deprivation of rights under the Fourth Amendment for unlawful arrest; in Count IV a claim of malicious prosecution; and in Count V-VIII, claims of civil conspiracy based both due process violations and violations of the Fourth Amendment.

"Although section 1983 provides for liability to the party injured, it does not foreclose survival of the action [o]n behalf of the estate of the injured party." *Hall v. Wooten*, 506 F.2d 564, 566 (6th Cir. 1974) (internal quotation marks omitted). In *Hall*, the Sixth Circuit held that an action for personal injury based on violation of a persons' civil rights survives under federal common law and may be maintained by the decedent's legal representative. *Id.* at 569. As in *Hall*, this Court must look to Kentucky law, KRS § 411.140, which provides for the survival actions of personal injury. Except for certain torts enumerated in K.R.S. § 411.140, tort actions survive the death of a party in Kentucky. KRS § 411.140 provides:

> No right of action for personal injury or for injury to real or personal property shall cease or die with the person injuring or injured, except actions for slander, libel, criminal conversation, and so much of the action for malicious prosecution as is intended to recover for the personal injury.

Malicious prosecution is among those causes of action excluded by the statute, thus Count IV for malicious prosecution under § 1983 cannot survive. Since none of the other federal civil

13

rights Counts are implicated, those causes of actions alleged in this case survive the death of Roberts and may be maintained by his legal representative, Polly Roberts Willman, Administratrix of the Estate of William Roberts. The Court notes, however, that to the extent Roberts' civil conspiracy claim survives, the constitutional violation upon which it is predicated cannot be a violation of procedural due process, as this Court has determined no such constitutional violation occurred.

Because certain federal civil rights claims survive the death of Roberts, this also Court retains jurisdiction to consider state law claims that survive. *See Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006) (citation omitted); *see also United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("Certainly, if the federal claims are dismissed before trial . . . the state claims should be dismissed as well."). At the hearing, Plaintiffs' counsel waived Roberts' state law claims of defamation and state law malicious prosecution, conceding these claims do not survive his death under KRS § 411.140. Also, as established above, invasion of privacy is a cause of action personal in nature, thus this claim will not survive the death of Roberts. *Mineer*, 82 F. Supp. at 704-06. So, to the extent that Plaintiffs' remaining claims—abuse of process, false imprisonment, and intentional infliction of emotional distress—are based upon common law personal injury cause of action, they survive Roberts' death and may be pursued on his behalf by his estate.

### III. CONCLUSION

Accordingly, for the foregoing reasons, **IT IS HEREBY ORDERED** that City Defendants' motion to dismiss Count I of the Complaint (DE 17) is **GRANTED** and Count I is **DISMISSED** from this action. Plaintiffs' motion to substitute (DE 22) is **DENIED**.

Additionally, **IT IS FURTHER ORDERED** that

1. Counts V-VIII are **DISMISSED** to the extent they are predicated on a procedural due process violation;

2. Count IV is **DISMISSED**;

3. Count XII is **DISMISSED**;

4. Count XIII is **DISMISSED**;

5. Count XIV is **DISMISSED**; and

6. The remaining claims—Counts II-III, Counts V-VIII to the extent the claims are predicated on Fourth Amendment violations, Count IX, Count X, and Count XI—brought by Polly Roberts Willman, Administratrix of the Estate of William Roberts, as they pertain to personal injury suffered by William Roberts are not properly before the Court at this time and may be pursued on his behalf by his estate.

Dated February 16, 2017.

KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY